NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT NISSEN, et al., | Civil Action No.: 08-5563 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| THEODOR ROZSA, et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for summary judgment filed by Plaintiffs on April 1, 2011 and a cross motion for partial summary judgment filed by Defendants on May 16, 2011. The Court has considered the submissions of the parties in support of and in opposition to the present motions and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons that follow, both motions are denied.

I.  BACKGROUND

The following facts are undisputed, except where noted. This matter arises from a dispute regarding a commission paid in connection with the sale of Sagmel, a pharmaceutical company, to Bayer Pharmaceutical ("Bayer"). In 2005, Sagmel entered into a representation agreement with Defendant TR Strategic Group, LLC ("TR Strategic") to assist it with finding financing or a buyer for its business. (Pls.' Stmt. of Uncontested Facts ("SOF") ¶ 22.) TR Strategic is a sole proprietorship owned by Defendant Theodor Rozsa ("Rozsa"). (SOF ¶ 19.)

The representation agreement between Sagmel and TR Strategic had a term of six months—spanning from July 18, 2005 to January 18, 2006—and provided for Sagmel to pay TR Strategic a commission if it obtained financing or located a buyer. (Id. at ¶ 22, 26.)

In July 2005, Rozsa sent Plaintiff Arthur Blumenthal ("Blumenthal") an email correspondence regarding an "exciting brokerage project for mutual profit." (Id. at ¶ 30.) Rozsa meant "for mutual profit" to be understood as a 50/50 split of the proceeds. (Id.) Thereafter, Rozsa and Blumenthal began working together to find a buyer for Sagmel. (Id. at ¶ 33.) During the fall of 2005, Blumenthal prepared a business plan for Sagmel and revised Sagmel's financial reports. (Id. at ¶ 50, 59.) Rozsa reviewed those reports, and the business plan was finalized in late October. (Id. at ¶ 59, 61.) Rozsa states that during this time he contacted various pharmaceutical companies as potential buyers for Sagmel. (Id. at ¶ 66–74.) In November 2005, Rozsa received a telephone call from Blumenthal stating that he wished to bring in Plaintiff Robert Nissen ("Nissen") to assist with the Sagmel project. (Id. at ¶ 75–76.) Rozsa never intended to compensate Nissen and believed that Nissen would be paid from any compensation paid to Blumenthal. (Id. at ¶ 111.)

In January 2006, TR Strategic's representation agreement with Sagmel expired without a buyer having been found. (Id. at ¶ 80.) At that time, Rozsa temporarily ceased his efforts to locate a buyer, (id.), but continued to contact Sagmel in the hopes of forming a new representation agreement, (id. at ¶ 81). During the first half of 2006, Blumenthal contacted several pharmaceutical companies concerning Sagmel. (Id. at ¶ 102.) In March 2006, Blumenthal contacted Soumitra Mukherjee at Bayer regarding Sagmel, but nothing came of the discussion. (Id. at ¶ 107.) Sometime in the summer of 2006, Nissen began working for Bayer as

a business development consultant. (Id. at ¶ 134, 277.) On June 26, 2006, Nissen also communicated with Soumitra Mukherjee regarding Sagmel, but likewise failed to generate interest on the part of Bayer. (Id. at ¶ 106–7.)

In July 2006, Rozsa, Blumenthal, and Nissen met for dinner in Tarrytown, New York (the "Tarrytown meeting"). (Id. at ¶ 113.) Prior to this meeting, Rozsa had prepared a list of pharmaceutical companies that he thought might be interested in purchasing Sagmel. (Id. at ¶ 116.) Bayer was identified on the list as a top candidate, but Rozsa did not suggest that the parties contact Bayer, because no representation agreement with Sagmel was currently in place. (Id. at ¶ 117.) Plaintiffs allege that at the close of the Tarrytown meeting, the parties agreed to share evenly any income from the Sagmel project, with each receiving a 30% fee and with the additional 10% to be allocated later. (Id. at ¶ 118, 128.) Defendants dispute this assertion, contending that no such oral agreement was reached and that any discussion of sharing income was "merely a toast to potential future collaborations . . . something which never came to fruition." (Defs.' Resp. to Pls.' Stmt. of Uncontested Facts ["Defs.' Resp. Stmt."] ¶ 118.) The parties did not discuss the allocation of expenses, taxes, the governing law, or when any agreement among them might terminate. (SOF ¶ 123–26.) No agreement was ever reduced to writing. (Defs.' Stmt. of Undisputed Mat'l Facts ¶ 6.)

In the summer of 2007, Nissen spoke with his supervisor at Bayer about the potential acquisition of Sagmel. (SOF ¶ 137.) The supervisor referred Nissen to Peter Lauff, another Bayer employee. In August 2007, Nissen spoke with Lauff about Sagmel, and Lauff expressed interest in pursuing the matter further. (Id. at ¶ 136, 141.) Nissen then advised Rozsa that Bayer was interested in Sagmel, and in September 2007, TR Strategic and Sagmel entered into a new

representation agreement, which provided for TR Strategic to receive as a commission 1% of the sale price. (Id. at ¶ 164, 165.) In October 2007, Nissen arranged a meeting between representatives of Bayer and representatives of Sagmel to discuss the potential deal. (Id. at ¶ 156, 159.) Rozsa and Nissen were in attendance. (Id. at ¶ 159.) In November 2007, a second meeting was held between Bayer and Sagmel representatives, with Rozsa, Blumenthal, and Nissen in attendance. (Id. at ¶ 208.) Later that month, Rozsa met with Bayer officials in Germany, after which Bayer made a verbal offer of $400 million to purchase Sagmel. (Id. at ¶ 219–20.) Rozsa participated in the negotiations that followed. (Id. at ¶ 243–45.) From November 2007 to June 2008, Rozsa kept Blumenthal apprised of the status of the transaction, but Blumenthal was not directly involved in the negotiations or the related due diligence. (Id. at ¶ 224–25.) Nissen also does not appear to have been involved in the transaction after the November meetings. (See generally id. at ¶ 214–66.)

On June 3, 2008, the Bayer-Sagmel deal closed. (Id. at ¶ 267.) As a result, TR Strategic was entitled to, and eventually received, a commission of $4,300,000[1] from Sagmel for its services. (Id.) Blumenthal subsequently asked Rozsa for 33% of that commission for himself and 10% for Nissen. (Id. at ¶ 271.) Rozsa responded by suggesting that the commissions be split so that Blumenthal would receive 20% and Rozsa would retain the remaining 80%. (Id. at ¶ 272.)

On November 12, 2008, the instant action was filed. On September 10, 2009, Blumenthal and Nissen filed an Amended Complaint seeking to recover 60% of the commissions

---

[1] The Amended Complaint alleges that the amount of the commission was "approximately $4,320,000." (First Am. Compl. ¶ 28.)

received by TR Strategic, based on the agreement that was allegedly reached at the June 2006 meeting in Tarrytown. (First Am. Compl. ¶ 36.) The Amended Complaint alleges claims under theories of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraud, and asks that a constructive trust be imposed on the commissions currently in Defendants' possession. On April 1, 2011, Plaintiffs moved for summary judgment on all counts except fraud, and on May 16, 2011, Defendants cross moved for partial summary judgment on the existence and enforceability of any contract among the parties.

## II.  LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**III.    DISCUSSION**

Plaintiffs move for summary judgment on the grounds that (A) a partnership or joint venture existed among the parties and (B) an enforceable oral contract existed among the parties. Defendants cross move for summary judgment on the grounds that any oral contract that might have existed among the parties is barred by the statute of frauds or, in the alternative, is unenforceable because there was no agreement as to certain essential terms. Plaintiffs further move for summary judgment on their claims of (C) breach of the implied covenant of good faith and fair dealing, unjust enrichment, and for the imposition of a constructive trust.

**A.    Partnership and Joint Venture Claims**

As an initial matter, the Court rejects Plaintiffs' motion for summary judgment that a partnership or a joint venture existed among the parties, as the Amended Complaint contains no cause of action based on either of those theories of liability. The Amended Complaint asserts only that Blumenthal and Rozsa "formed a business partnership" in or about August 2005. (First Am. Compl. ¶ 8). It does not seek recovery on that basis, or on a joint venture theory. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a)." Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)). The Court will not address causes of action raised for the first time in Plaintiffs' summary judgment brief.

B.  **Breach of Contract Claim**

1.  Statute of Frauds

Defendants' cross motion for partial summary judgment argues that any oral agreement that might have existed among the parties is void under the New Jersey Statute of Frauds. N.J.S.A. 25:1-16(c) provides that "a business broker is entitled to a commission only if before or after the sale of the business, the authority of the broker is expressed or recognized in a writing signed by the seller or buyer or authorized agent, and the writing states either the amount or the rate of commission." The statute defines a "business broker" as "a person who negotiates the purchase or sale of a business." N.J.S.A. 25:1-16(a). Defendants argue that because Blumenthal and Nissen assisted in the negotiation and procurement of the sale of Sagmel to Bayer, they acted as business brokers within the meaning of N.J.S.A. 25:1-16(c).

Plaintiffs respond that Defendants misunderstand the purpose of the statute of frauds, arguing that it is meant to protect the public from the fraudulent practices of brokers, not to protect brokers from other brokers. (Pls.' Reply Br. at 23); see C&J Colonial Realty, Inc. v. Poughkeepsie Savings Bank, FSB, 810 A.2d 1086, 1102 (N.J. Super. Ct. App. Div. 2002) ("The purpose of the statute of frauds as it pertains to real estate commissions is 'to protect the public from fraud, incompetence, misinterpretation, sharp or unconscionable practice[s]' by real estate brokers." quoting Ellsworth Dobbs, Inc. v. Johnson, 236 A.2d 843, 856 (N.J. 1967)). Plaintiffs argue that statute of frauds is therefore inapplicable to this "commercial dispute." (Pls.' Reply Br. at 24.) This Court agrees. Plaintiffs do not seek to enforce an oral contract requiring a seller to pay a commission to a broker. Plaintiffs rather seek the enforcement of an oral agreement among multiple brokers to share such a commission, once it is received from the seller. This

case therefore does not concern the entitlement of a business broker to a commission from a "seller or buyer or authorized agent," as under the statute, but instead the distribution of that commission from one business broker to other business brokers. The Court thus concludes that any oral contract among the parties here would not be void under N.J.S.A. 25:1-16(c), and Defendants' cross motion for summary judgment on this issue is thus denied.

2. Existence of an Oral Agreement

Plaintiffs' motion for summary judgment asserts that they are entitled to recover on either of two oral contracts allegedly made with Rozsa. The first contract, the "50/50 contract," was allegedly formed between Blumenthal and Rozsa in July 2005. Plaintiffs allege that in that contract Blumenthal and Rozsa agreed to share equally the commissions from any sale of Sagmel. The second contract, the "30/30/30/10 contract," was allegedly formed at the Tarrytown meeting in July 2006. Plaintiffs allege that in that contract Blumenthal, Nissen, and Rozsa agreed to split the commissions 30% each, with the remaining 10% to be distributed by some subsequent agreement. Plaintiffs urge that "[i]f the Court does not find that there was a sufficient understanding or agreement between the parties to share the commissions 30% / 30% / 30% with the additional 10% to be distributed thereafter by agreement, the Court should nevertheless enforce the original agreement to share the commissions 50% / 50%, as that agreement was never terminated or withdrawn." (Pls.' Reply Br. at 9; see Pls.' Br. in Supp. of Mot. for Summ. J. at 48.) Plaintiffs' submissions, however, are not entirely consistent on this point, as their statement of the undisputed facts asserts that "[f]ollowing the Tarrytown, New York meeting the only

agreement between the parties was to split the fee 30/30/30/10."[2] (SOF ¶ 129 (emphasis added).)

The Court need not address this issue here, though, because like Plaintiffs' arguments regarding partnerships and joint ventures, the Amended Complaint makes no mention of recovery under the 50/50 contract. While the Amended Complaint does plead that in August 2005 "Plaintiff Blumenthal and Defendant Rozsa met and orally agreed to an equal split of any commissions/proceeds that TR might receive from assisting Sagmel in the sale of its business," (First Am. Compl. ¶ 11), it seeks recovery under the 30/30/30/10 contract alone. The Amended Complaint specifically "demand[s] judgment in the amount of at least $2,592,000.00 (60% of $4,320,000 [the commission received by TR Strategic]) . . ., (id. at ¶ 36), with "60%" apparently comprising the two 30% shares allegedly owed to Blumenthal and Nissen under the 30/30/30/10 contract. No count in the Amended Complaint seeks recovery under the 50/50 contract. Thus, once again, the Court will not address a cause of action raised for the first time in Plaintiffs' summary judgment brief.

The Court now turns to Plaintiffs' motion for summary judgment with respect to breach of the 30/30/30/10 contract, a claim which is actually asserted in the Amended Complaint. Plaintiffs argue that there is no dispute that the parties agreed at the Tarrytown meeting to split the proceeds of any commission 30% / 30% / 30% / 10%. Defendants respond that genuine issues of material fact preclude summary judgment on this issue, contending that no such oral agreement was reached and that any discussion of the sharing of commissions was "merely a toast to potential future collaborations . . . something which never came to fruition." (Defs.'

---

[2]Defendants' submissions only deepen the Court's confusion here, as Defendants appear to deny that the 50/50 contract was formed, (see Defs.' Resp. Stmt. ¶ 31), but then fail to address the existence or enforceability of that alleged contract in their briefing.

Resp. Stmt. ¶ 118.)

"A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992) (quoting West Caldwell v. Caldwell, 138 A.2d 402, 410 (N.J. 1958)). An enforceable contract is thus created if the parties "agree on essential terms and manifest an intention to be bound by those terms." Id. Plaintiffs rely on their own deposition testimony to support their contention that an oral agreement was formed at the Tarrytown meeting. (See SOF ¶ 120–22, 127–29.) Defendants, however, point to the deposition testimony of Defendant Rozsa to show that the parties merely discussed the possibility of future collaboration and did not intend to form a contract. (See Defs.' Resp. Stmt. ¶ 118.) The determination of the parties' objective intent to be bound by a contract thus turns on the credibility of the witnesses to the Tarrytown meeting. The Court therefore concludes that genuine issues of material fact preclude summary judgment on the issue of whether a valid contract was formed at the Tarrytown meeting, and Plaintiffs' motion for summary judgment on this issue is thus denied. See California Natural, Inc. v. Nestle Holdings, Inc., 631 F. Supp. 465, 470–71 (D.N.J. 1986) (denying summary judgment on the existence of an oral agreement citing conflicting deposition testimony).

3.   Essential Terms

Defendants' cross motion for summary judgment relies on the uncertainty surrounding the Tarrytown meeting to argue that because there was no definite agreement among the parties as to the manner of the contract's performance, its duration, or the compensation to be paid, any potential contract would be unenforceable even if it were supported by an offer and acceptance.

Plaintiffs respond that the parties did in fact agree on the manner of performance and compensation to be paid under the contract, and that an appropriate duration can be inferred from the circumstances surrounding its formation.

As an initial matter, the parties clearly dispute whether an agreement was reached regarding manner of performance and compensation. Plaintiffs contend that the parties manifested their agreement to work together on the sale of Sagmel and to split any resulting commissions, (SOF ¶ 118–122, 128), while Defendants dispute the extent to which the parties discussed and agreed to the proposed collaboration as well as any compensation that would flow therefrom, (see Defs.' Resp. Stmt. ¶ 118; see also Defs.' Stmt. of Undisputed Mat'l Facts ¶ 8–10; Pls.' Resp. to Defs.' Stmt. of Uncontested Facts ¶ 8–10). Indeed, the fundamental dispute in this case is what, if anything, the parties agreed to at the Tarrytown meeting. Thus, the determination as to whether these two terms are indeed "missing" depends on the resolution of disputed material facts. Summary judgment is therefore inappropriate.

With respect to duration, however, the parties do not dispute that "[t]here was never any discussion or understanding between Defendant Rozsa, Plaintiff Blumenthal and Plaintiff Nissen as to the duration of the alleged oral agreement or the circumstances under which the alleged agreement could be terminated." (Defs.' Stmt. of Undisputed Mat'l Facts ¶ 12; see Pls.' Resp. to Defs.' Stmt. of Uncontested Facts ¶ 12.) Plaintiffs nonetheless contend that a definite time period can be "inferred from the parties and the surrounding circumstances," thereby rendering the alleged contract enforceable. (Pls.' Reply Br. at 13 (quoting Restatement (Second) of Contracts § 204 (1981)).) "Where the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable." Ryan, 608 A.2d at 284. However,

"[t]he law generally and in New Jersey does not favor voiding a contract for vagueness." Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1020, 1026 (D.N.J. 1995). Thus, "when parties to a contract have not agreed in respect of a term that is essential to a determination of their rights and duties, a term that is reasonable in the circumstances is supplied by the court." In re Miller's Estate, 447 A.2d 549, 554 (N.J. 1982). "[I]f a definite period of time can be inferred from the conduct of the parties and the surrounding circumstances, then that time period should govern the duration of the agreement." Id. Here, any inference by the Court of a definite time period for the alleged 30/30/30/10 agreement would require consideration of "surrounding circumstances" which clearly remain in dispute. While it is undisputed that the parties met in Tarrytown to discuss the potential sale of Sagmel, the details of those discussions are evidenced only through the conflicting deposition testimonies of the parties. The Court therefore cannot conclude that the alleged agreement would be void for vagueness or that a missing essential term can be inferred from the circumstances without resolving the factual issues surrounding the Tarrytown meeting. As such, summary judgment on this issue is inappropriate, and Defendants' cross motion is denied.

C.     **Plaintiffs' Remaining Claims**

Plaintiffs further seek summary judgment on their implied covenant of good faith and fair dealing claim and unjust enrichment claim, and ask that the Court impose a constructive trust on commissions in the Defendants' possession. As the Court has already found that genuine issues of material fact preclude summary judgment on question of whether an oral contract existed among the parties, the Court does not reach the question of whether the implied covenant of good faith and fair dealing has been breached, because "[i]n the absence of a contract, there is no

implied covenant of good faith and fair dealing." Nolan v. Control Data Corp., 579 A.2d 1252, 1257 (N.J. Super. Ct. App. Div. 1990).  The Court likewise does not reach Plaintiffs' unjust enrichment claim, as recovery under that theory is only available in the absence of a valid contract.  See Van Orman v. Am. Ins. Co., 680 F.2d 301, 311 (3d Cir. 1982); Caputo v. Nice-Pak Prods., Inc., 693 A.2d 494, 498 (N.J. Super. Ct. App. Div. 1997) ("Because unjust enrichment is an equitable remedy resorted to only when there was no express contract providing for remuneration, a plaintiff may recover on one or the other theory, but not both.").  Summary judgment on these issues is thus denied.

The Court further denies Plaintiffs' request for the imposition of a constructive trust.  The Court has already denied Plaintiffs' previous application for a preliminary injunction imposing a constructive trust on commissions in the possession of Defendant Rozsa.  See Docket Entry Nos. 21 & 22 (Opinion and Order dated August 3, 2009).  Now, Plaintiffs again seek a constructive trust on the basis of both "wrongful conduct and unjust enrichment" on the part of Defendant Rozsa.  A constructive trust is an equitable remedy and not a cause of action in and of itself.  See Flanigan v. Munson, 818 A.2d 1275, 1281 (2003); Bergen-Eastern Pension Trust v. Sorensen, No. BER-L-7669-03, 2007 WL 283440, at *2 n.3 (N.J. Super. Ct. App. Div. Jan 11, 2007).  As the Court has not granted summary judgment on any of the causes of action properly asserted in Plaintiffs' Amended Complaint, it does not reach the question of whether the imposition of a constructive trust is appropriate.  Plaintiffs' motion for summary judgment on this issue is thus denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied, and

Defendants' cross motion for partial summary judgment is denied.  An appropriate Order accompanies this Opinion.


DATED: June 23, 2011                      /s/ Jose L. Linares
                                         JOSE L. LINARES
                                         UNITED STATES DISTRICT JUDGE