UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT NISSEN, ET AL., | |
| Plaintiffs, | Civil Action No. 08-5563 (JLL) |
| v. | |
| THEODOR ROZSA, ET AL., | OPINION |
| Defendants. | |

**HAMMER, United States Magistrate Judge**

### I. INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for leave to file a Second Amended Complaint. For the reasons set forth herein, Plaintiffs' motion is denied.

### II. BACKGROUND

#### A. Factual Background

Plaintiffs allege that Defendants failed to pay their fair share of a commission following the sale of one pharmaceutical company to another. (Proposed 2d Am. Compl. ¶¶ 27–29, 34–36, Aug. 15, 2011, ECF No. 72.) In July 2005, Sagmel, a pharmaceutical company, contracted Defendant TR Strategic Group, LLC, under a six-month term of representation to find a buyer. (Id. ¶¶ 9, 12.) TR Strategic Group's sole member and owner is Defendant Theodor Rozsa. (Id. ¶ 5.) In August 2005, Rozsa and Plaintiff Arthur Blumenthal orally agreed to equally split any commission from the sale of Sagmel (hereinafter, the "50/50" share or agreement). (Id. ¶ 11.) In November 2005, Blumenthal introduced Rozsa to Plaintiff Robert Nissen to assist with the sale

of Sagmel. (Id. ¶ 14.) Around that time, Nissen learned that the TR Strategic/Sagmel representation agreement would expire at the end of 2005. (Id.) In March 2006, Nissen agreed to assist with the sale of Sagmel. (Id. ¶ 15.) In late July 2006, Rozsa, Blumenthal, and Nissen orally agreed to share the proceeds as follows: each would receive thirty percent of any commission or proceeds, and the remaining ten percent would go to the persons most involved in consummating the sale (hereinafter, the "30/30/30/10" share or agreement). (Id. ¶ 17.) Also in July 2006, Rozsa advised Blumenthal and Nissen that he had negotiated a verbal fee agreement with Sagmel, such that TR Strategic Group could continue to represent Sagmel. (Id. ¶ 19.)

Through 2006 and 2007, Blumenthal and Nissen attempted to find a buyer for Sagmel. (See id. ¶¶ 18, 20–21.) In August 2007, Nissen approached Bayer Health Care Consumer Care Division ("Bayer") and arranged for meetings between Bayer and Sagmel in October and November 2007. (Id. ¶¶ 20–22.)

In March 2008, Bayer agreed to purchase Sagmel and consummated the transaction in June 2008. (Id. ¶ 27.) TR Strategic Group received an initial payment $3,240,000 as part of a commission totaling $4,320,000. (Id. ¶¶ 28–29.) Following the Sagmel-Bayer closing, Rozsa allegedly reneged on the 30/30/30/10 agreement and claimed that he was entitled to a substantially greater percentage of the commission. (Id. ¶¶ 31–33.)

### B. Procedural History

On November 12, 2008, Nissen and Blumenthal (collectively "Plaintiffs") filed a Complaint against Rozsa alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Verified Compl. ¶¶ 30, 32, 36, Nov. 12, 2008, ECF No. 1.) Plaintiffs demanded "at least $2,592,00.00 (60% of $4,320,000)" and requested that

the commission monies be placed in a constructive trust.  (Id. at 6–8, ¶¶ 38–41.)

On February 19, 2009, Plaintiffs filed a motion to impose a constructive trust on the proceeds from the commission or have the commission deposited with the Court.  (Mot. to Impose Constructive Trust, Feb. 12, 2009, ECF No. 12.)

On April 27, 2009, the Court held a scheduling conference and thereafter set a May 29, 2009, deadline to move to add new parties or amend the pleadings and an October 30, 2009, deadline for the completion of fact discovery.  (Pretr. Sched. Order, May 19, 2009, ECF No. 16.)

On August 4, 2009, the Court denied the motion to impose a constructive trust.  (Order, Aug. 4, 2009, ECF No. 22.)  Notably, in the underlying opinion, the Court recited the causes of action and summarized the allegations of the case.  In pertinent part, the Court stated "Plaintiffs' Complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment," and further stated that "Plaintiffs assert that they entered into an oral agreement with Defendant to split the commission from any sale: thirty percent each, with the remaining ten percent to be 'paid to the individual(s) who were most involved in consummating the transaction.'" (Opinion 1–2, Aug. 4, 2009, ECF No. 21 (quoting Verified Compl. ¶¶ 9, 15).)

On August 10, 2009, Plaintiffs moved for leave to file an Amended Complaint.  (Mot. to Amend, Aug. 10, 2009, ECF No. 23), which the Court granted on September 4, 2009.  (Order, Sept. 4, 2009, ECF No. 24.)  On September 10, 2009, Nissen and Blumenthal filed an Amended Complaint that added TR Strategic Group as a defendant and a cause of action based on fraud.  (Am. Compl. ¶¶ 36, 38, 42, 44–51, Sept. 10, 2009, ECF No. 26.)  Plaintiffs' demand for relief remained the same.  (Id. at 7–10.)

3

Thereafter, the case continued to proceed and the Court entered a series of orders extending the discovery deadlines in the case. The fact discovery deadline, originally May 29, 2009, was extended five times and ultimately set as October 30, 2010.  (Am. Sched. Order, Aug. 30, 2010, ECF No. 44; see also Pretr. Sched. Order, May 20, 2009, ECF. No. 16; Order on Oral Mot. Sched. Conf., Oct. 22, 2009, ECF No. 31; Am. Order on Oral Mot., Feb. 2, 2010, ECF No. 33; Order on Oral Motion, May 3, 2010, ECF No. 35; Am. Sched. Order, July 13, 2010, ECF No. 40.)  On December 17, 2010, the Court provided a further extension of the expert deadlines to February 15, 2011.  (Am. Sched. Order, Dec. 17, 2010, ECF No. 46.)

On April 1, 2011, Plaintiffs moved for summary judgment. (Mot. for Summ. J., Apr. 1, 2011, ECF No. 54.)  In pertinent part, they argued that the parties had formed a partnership or joint venture and that Rozsa had breached fiduciary duties owed to Plaintiffs.  (Summ. J. Br. 36–42, Apr. 1, 2011, ECF No. 54.)  Also, in regard to the breach of contract, breach of good faith and fair dealing, and unjust enrichment, Plaintiffs argued that they are entitled to the commission based on either a 50/50 share or a 30/30/30/10 share.  (Id. at 43–55.)  On May 16, 2011, Rozsa and TR Strategic Group cross-moved for partial summary judgment.  (Cross-Mot. for Summ. J., May 16, 2011, ECF No. 60.)

On June 23, 2011, the Court denied both motions for summary judgment.  (Order, June 23, 2011, ECF No. 66.)  As to Plaintiffs' partnership and joint venture claims, the Court found that the Amended Complaint "contains no cause of action based on either of those theories of liability." (Opinion 6, June 23, 2011, ECF No. 65.)  As for the other claims, the Court found that even though the Amended Complaint mentioned the "50/50 contract," it did not seek recovery on that basis.  (Id. at 8–9.)  The Court stated that:

4

> The Amended Complaint specifically "demand[s] judgment in the amount of at least $2,592,000.00 (60% of $4,320,000 [the commission received by TR Strategic]) . . ., ([Am. Compl.] ¶ 36), with "60%" apparently comprising the two 30% shares allegedly owed to Blumenthal and Nissen under the 30/30/30/10 contract. No count in the Amended Complaint seeks recovery under the 50/50 contract.

(Id. at 9.) The Court also noted that Plaintiffs' statement under L. Civ. R. 56.1 asserted that "[f]ollowing the [July 2006] Tarrytown, New York meeting the only agreement between the parties was to split the fee 30/30/30/10." (Id. at 8–9 (quoting Pl.'s 56.1 Statement ¶ 129) (emphasis added by Court).) The Court refused to consider causes of action that Plaintifs failed to alleged.

On August 15, 2011, Nissen and Blumenthal filed the present motion for leave to file a Second Amended Complaint. (Mot. for Leave to file 2d Am. Compl., Aug. 15, 2011, ECF No. 72.) The proposed Second Amended Complaint includes five additional causes of action: (1) breach of a partnership agreement based on a 50/50 share, (2) breach of a partnership agreement based on a 30/30/30/10 share, (3) breach of a joint venture agreement based on a 50/50 share, (4) breach of a joint venture agreement based on a 30/30/30/10 share, and (5) breach of contract based on a 50/50 share. (Proposed 2d Am. Compl. ¶¶ 57–61, 64–68, 71–76, 84–87, Aug. 15, 2011; see also 2d Am. Compl. ¶¶ 78–82, Aug. 10, 2011, ECF No. 71.)[1] On September 19, 2011, Defendants Rozsa and TR Strategic Group (collectively "Defendants") filed a brief opposing that

---

[1] The Court notes that Plaintiff's motion contains a deficient proposed pleading, namely, the proposed Second Amended Complaint is missing page 13, which contains count nine. (See Proposed 2d Am. Compl., Aug. 15, 2011, ECF No. 72.) There appears to be no dispute that the pleading erroneously filed on August 10, 2011, and titled "the Second Amended Complaint" is a complete version of the proposed pleading. (Compare Proposed 2d Am. Compl., Aug. 15, 2011, ECF No. 72 with 2d Am. Compl., Aug. 10, 2011, ECF No. 71.) Thus, the Court uses the August 10 pleading, ECF No. 71, to evaluate count nine of the proposed pleading at issue here.

motion (Defs.' Opp'n Br., Sept. 19, 2011, ECF No. 77). On September 23, 2011, Plaintiffs filed a reply brief. (Pls.' Reply Br., Sept. 23, 2011, ECF No. 78.)

### III.  ARGUMENTS

#### A.  Plaintiffs

Plaintiffs argue that, under Rule 15 of the Federal Rules of Civil Procedure, the Court should grant leave to file the proposed Second Amended Complaint because they merely seek to clarify their litigation positions. (Pls.' Br. 2–3, Aug. 15, 2011, ECF No. 72.) Notwithstanding the Court's summary judgment findings, they contend that their prior pleadings sufficiently set forth factual allegations and claims based on a partnership agreement and a 50/50 share. (Id.) They assert that no additional discovery is needed, the proposed pleading would not disrupt the Court's schedule, and no prejudice would result to the defendants. (Id. at 5–10.) Notably, they cite to facts outside their proposed pleading, namely, emails disclosed in discovery and assertions from their 56.1 statement. (Id. at 6–7.)

#### B.  Defendants' Response

In response, Defendants argue that Plaintiffs' motion fails under both Rule 16 and 15 of the Federal Rules of Civil Procedure. (Defs.' Opp'n Br. 1–2.) As to Rule 16, Defendants assert that the Court's deadline to amend pleadings expired two years ago, and therefore Plaintiffs must show good cause to amend the pretrial scheduling order. (Id. at 7–8.) Defendants aver that Plaintiffs do not even attempt to demonstrate good cause under Rule 16. (Id.) Defendants also contend that Plaintiffs cannot show good cause because Plaintiffs have long possessed the necessary facts and chose not to bring these claims until after their summary judgment motion failed. (Id. at 9–15.)

6

As to Rule 15, Defendants contend that the proposed Second Amended Complaint is futile, unduly prejudicial, and unduly delayed.  (Id. at 15–25.)  They note that Plaintiffs' brief contains factual support outside the proposed Second Amended Complaint.  (Id. at 16–17.)  As to the futility of claims based on a 50/50 share, Defendants argue that factual allegations only concern Plaintiff Blumenthal and Defendant Rozsa, not Plaintiff Nissen, and Plaintiffs recently stated in their summary judgment motion that the only agreement between the parties was to split the fee 30/30/30/10.  (Id. 17–18.)  As to futility of claims based on the partnership and joint venture agreements, Defendants argue that Plaintiffs' proposed pleading fails to contain factual assertions that would support the existence of a partnership or joint venture agreement.  (Id. at 19–21.)  As to undue delay and undue prejudice, Defendants contend that discovery was conducted based on a 30/30/3010 oral agreement, that the additional claims would require the reopening of discovery, which would create severe prejudice.  (Id. at 21–25.)

      C.      **Plaintiff's Reply**

In reply, Plaintiffs argue that they have met the standards of both Rule 16 and 15.  (Pls.' Reply Br.)  Regarding Rule 16's good cause requirement, Plaintiffs assert that they made an erroneous omission which constitutes excusable neglect because it was "readily apparent" that they sought damages under either a 50/50 or 30/30/30/10 oral agreement.  (Id. at 5–6.)  Regarding undue prejudice, Plaintiffs contend that they merely seek to clarify their litigation positions in light of the Court's summary judgment opinion, that no additional discovery would be necessary as the 50/50 share theory was explored in discovery, and Defendants have failed to state any discovery that would be needed.  (Id. at 6–9.)  Also, as to Defendants' assertion that the 30/30/30/10 agreement was the only operative agreement, Plaintiffs assert that Defendants

7

disputed this statement, that other assertions in the 56.1 statement support Plaintiffs' theories of recovery, and that other significant deposition testimony exists supporting the 50/50 share and the partnership and joint venture agreement. (Id. at 9–10.)

As to futility, Plaintiffs argue that, because they merely seek to assert alternate forms of recovery based on the same facts, it "cannot seriously be contended" that those alternate forms are futile. (Id. at 10–11.) Moreover, because the Court did not grant summary judgment in the defendant's favor, the proposed new claims are not futile. (Id. at 10–11.)

## IV.	DISCUSSION

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules for proceedings. Rule 16 identifies a list of events that a court controls, including amending pleadings and completing discovery.[2] The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); see also Newton v.

---

[2] Moreover, the purpose of this rule is to allow the Court to order

> the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as: (1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating settlement.

Fed. R. Civ. P. 16(a); see also Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment) (stating that "scheduling and case management" are express goals of pretrial procedure and emphasized judicial management of motions and discovery); Fed. R. Civ. P. 16(c) advisory committee's note (1993 amendment) (noting the need "to eliminate questions that have occasionally been raised regarding the authority of the court to make appropriate orders designed . . . to provide for an efficient and economical trial").

A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990) (stating that the purpose of Rule 16 is to provide for judicial control over a case, streamline proceedings, maximize efficiency of court system, and actively manage timetable of case preparation to expedite speedy and efficient disposition of cases).

Under Rule 16(b)(4), a pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000) (finding no abuse of discretion where district court denied motion to amend complaint requested after scheduling order deadline for absence of good cause and unexplained delay). Allowing extensions in the absence of "good cause" would "deprive trial judges of the ability to effectively manage the cases on their overcrowded dockets" and severely impair the utility of scheduling orders. Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir. 1986). Moreover, "[t]o argue that there should be a liberal policy of freely permitting amendments is to ignore . . . the purposes of case management and the scheduling orders which 'are at the heart of case management.'" Harrison, 133 F.R.D. at 469 (quoting Koplove, 795 F.2d at 18).[3]

---

[3] Although an explicit pretrial scheduling deadline can trigger Rule 16(b)(4), it is not necessary. Phillips v. Greben, Civ. No. 04-5590, 2006 WL 3069475, at *6–7 (D.N.J. Oct. 27, 2006); McDerby v. Daniels, Civ. No. 08-882, 2010 WL 2403033, at *6 (D. Del. June 16, 2010). For example, in Phillips, Chief Judge Garrett E. Brown, Jr., found that Rule 16(b) applied even though the scheduling order did not set a deadline to amend the pleadings because "it was certainly clear that any possibility to amend the pleadings would expire when discovery closed." Phillips, 2006 WL 3069475, at *6. Likewise, in McDerby, a district court in Delaware found that, even though the scheduling order "d[id] not contemplate" the need for a deadline to amend the pleadings, Rule 16(b) applied to a motion to amend filed after the deadline for dispositive motions, after the close of discovery, and only months before trial. McDerby, 2010 WL 2403033, at *6. Here, fact discovery, which the Court has extended five times, ended on October 30, 2010, thereby providing the parties ample opportunity beyond the initial closing date to conduct fact discovery. Thus, whether viewed from the Court's explicit expired deadline to

As Chief Judge Brown observed, "good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" Phillips, 2006 WL 3069475, at *6 (citing Newton v. Dana Corp. Parish Div., Civ. No. 94-4958, 1995 WL 368172, at *1 (E.D. Pa. 1995)). Thus, a party seeking to adjust a scheduling order must show they otherwise acted with diligence. As the advisory committee observed, "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, advisory committee's note (1983 Amendment). Thus, "[a]bsent diligence, there is no 'good cause.'" Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007).

Here, the deadline to amend the pleadings expired over two years ago — on May 29, 2009. (Pretr. Sched. Order, May 20, 2009, ECF No. 16.) Fact discovery ended nine months before the filing of the present motion — on October 30, 2010. (Am. Pretr. Sched. Order, Aug. 30, 2010, ECF No. 44.) Granting leave to amend the Amended Complaint to include new causes of action implicates the Court's pretrial orders as it may, for example, potentially inject new issues into the case right before trial, necessitate new discovery, or implicate further dispositive motion practice. See Harrison, 133 F.R.D. at 469. And requiring less than good cause would nullify the Court's ability to enforce its schedule orders to manage this case, id., especially considering that the deadline to amend expired two years ago and fact discovery ended nine months before this motion was filed. Accordingly, the Court requires Plaintiffs to demonstrate

---

amend pleadings two years ago or from the end of fact discovery nine months ago, Plaintiffs must demonstrate good cause to extend the deadline to amend the pleadings.

good cause to amend the pleadings.

Plaintiffs argue only that good cause exists because they committed excusable neglect. (Pls.' Reply Br. 5–6.) Specifically, they argue that "it is readily apparent that Plaintiffs were seeking damages under either oral agreement (50/50 or 30/30/30/10) made between the parties and through an erroneous omission in the 'wherefore' clause, Judge Linares determined it had not been sufficiently pled." (Id.) Thus, Plaintiffs appear to rely on the contention that their original pleadings asserted causes of action involving the 50/50 agreement as well as a partnership or joint venture, and that such causes of action were "readily apparent."

A review of the pleadings, however, indicates these claims are not "readily apparent." As to claims involving a 50/50 share, the original Verified Complaint and the Amended Complaint allege an agreement of an "equal split" of the commission between Rozsa and one plaintiff (Blumenthal). (Verified Compl. ¶ 11; Am. Compl. ¶ 11.) Plaintiffs also allege a later agreement involving a 30/30/30/10 share involving Rozsa and both plaintiffs. (Verified Compl. ¶ 15; Am. Compl. ¶ 17.) Plaintiffs' causes of action, however, repeatedly refer to only a single agreement that concerns both plaintiffs — ie., the 30/30/30/10 agreement. (E.g., Verified Compl. ¶¶ 26–29; Am. Compl. ¶¶ 31–35.) Thus, based on the pleadings, Plaintiffs can refer only to the later, three-way 30/30/30/10 agreement. Moreover, Plaintiffs repeatedly requested, in both prior pleadings, damages in the amount of "at least" 60% of the commission. (See Verified Compl. 6–8; Am. Compl. 7–9.) As the Court has already noted, those causes of action can refer only to the 30/30/30/10 agreement and cannot be reasonably interpreted as seeking recovery under a 50/50 contract. (Opinion 9, June 23, 2011.) Moreover, Plaintiffs verified their original pleading, and

11

the Court's interpretation is consistent with Plaintiffs representations outside the pleadings.[4]

Likewise, claims regarding partnership and joint venture claims are not readily apparent as Plaintiffs' submissions indicate. The Verified and Amended Complaint alleged that Defendants "have breached the contractual agreement between the parties regarding the split of any commissions/proceeds earned from finding a buyer for Sagmel's business." (Verified Compl. ¶ 30; Am. Compl. ¶ 36.) Plaintiffs presently contend that they had set forth claims regarding not only an oral contract but also claims regarding a partnership or joint venture agreement. (Pl.'s Br. 2–3; see also Schmidt Cert. ¶ 3, Aug. 15, 2011, ECF No. 72.) Plaintiffs' summary judgment motion, however, argued something different. Plaintiffs argued that the parties formed a partnership or joint venture, that Rozsa owed fiduciary duties, and that Rozsa breached those fiduciary duties by refusing to share profits. (See Pl.'s Summ. J. Br. 40, 42, Apr. 1, 2011, ECF No. 54 (page 40: "Accordingly, a partnership was formed and Rozsa owed fiduciary duties to his partners which were ultimately breached."; page 42: "Accordingly, a joint venture was created by these individuals, and fiduciary duties were owed to each other. By not complying with his end of the bargain, Rozsa has breached those fiduciary duties.").) On this motion, Plaintiffs claim they merely seek to clarify what they thought they had alleged, as argued

---

[4] To the extent Plaintiffs contend that the Court should look outside pleadings for support, the Court's prior interpretations of this pleading appear consistent with at least some of Plaintiffs' own statements. For example, Plaintiffs' statement under L. Civ. R. 56.1 asserted that 30/30/30/10 was "the only agreement between the parties." (Pls.' 56.1 Statement ¶ 129, Apr. 1, 2011, ECF No. 54 (citing Pl. Blumenthal's Dep. Tr. 351:18–352:4).) But it is generally improper to consider matters outside the pleadings to evaluate whether that pleading is futile, as alleged here. See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1992). The Court, however, is not evaluating the sufficiency of Plaintiffs' pleading. The Court is evaluating only Plaintiffs' contention that their 50/50 claims were "readily apparent" from the inception of this case in support of their excusable neglect argument.

during their summary judgment motion. (See Pls.' Br. 6–8.) But while Plaintiffs seemingly asserted a breach of fiduciary duty in their summary judgment briefs, Plaintiffs now seem to use the legal existence of a business relationship to support the alleged oral contract. (See, e.g., Proposed 2d Am. Compl. ¶¶ 57–61 ("57. Defendant and Plaintiffs formed a partnership agreement. 58. The parties agreed to an equal split of commission earned by the partnership . . . . 61. Defendants breached their partnership agreement with Plaintiffs.") Regardless of what Plaintiffs have attempted to allege at any particular point during this case, this record indicates that Plaintiffs' proposed causes of action are not as readily apparent as they argue. Thus, the Court cannot find that Plaintiffs have made a mere erroneous omission that supports a finding of excusable neglect.

Moreover, Plaintiffs should not be surprised that the Court interpreted their pleading the way it did during summary judgment. As early as August 4, 2009, the Court described Plaintiffs' claims as "claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment." (Opinion 1, Aug. 4, 2009, ECF No. 21.) The Court further described the basis for the claims as "an oral agreement with Defendant to split the commission from any sale: thirty percent each, with the remaining ten percent to be 'paid to the individual(s) who were most involved in consummating the transaction.'" (Opinion 1–2, Aug. 4, 2009 (quoting Verified Compl. ¶¶ 9, 15).) As such, the Court's August 4, 2009 articulation of Plaintiffs' claims is incongruent with Plaintiffs' present assertions. Yet when Plaintiffs amended their claims merely a month later, in September 2009, Plaintiff only made two changes: they added TR Strategic Group as a defendant to the existing claims and they added a fraud claim solely against Rozsa. (See Am. Compl. ¶¶ 36, 38, 42, 51.) The factual allegations and the

request for relief remained the same.

In sum, the prior pleadings are not "readily" interpreted to encompass the claims Plaintiffs sought to assert at summary judgment, or the claims Plaintiffs now seek to add. And the Court's views at summary judgment are consistent with the position it took years earlier in this case, after which Plaintiffs did not act to clarify their litigation position. Accordingly, based on this record, the Court cannot find that Plaintiffs acted with diligence or that their conduct constitutes excusable neglect. Thoman v. Philips Med. Sys., Civ. No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (finding no good cause where a plaintiff intended to assert one claim but instead asserted another); cf. Coulson v. Town of Kearny, Civ. No. 07-5893, 2010 WL 331347, at *4 (D.N.J. Jan. 19, 2010) (finding good cause where equipment failure caused movant to miss deadline to amend pleadings by sixty-three minutes); WebXchange Inc. v. Dell Inc., Civ. No. 08-132, 2010 WL 256547, at *2–3 (D. Del. Jan. 20, 2010) (finding good cause where movant did not have necessary information prior to amending its pleading to add claims).

Lastly, the Court addresses Plaintiffs' assertions that the proposed claims are supported by facts uncovered in discovery. Plaintiffs do not directly assert that facts uncovered in discovery support their assertion of excusable neglect, but rather assert that their prior pleadings sufficiently set forth the present proposed claims. Nevertheless, Plaintiffs do argue generally that they seek alternative theories of recovery based on facts already before the Court. (E.g., Pls.' Br. 2–3, 6–7.) Thus, the Court is compelled to note that, to the extent that Plaintiffs' proposed claims are based on facts uncovered in discovery, Plaintiffs were required to diligently seek amendments when they acquired enough facts to support such amendments. See, e.g., Assadourian v. Harb, 430 F. App'x 79 (3d Cir. 2011) ("[T]he proposed amendment . . . was

based on documents that Assadourian possessed even before he amended his complaint the third time; it was thus proper for the District Court to conclude that Assadourian had not acted diligently . . . ."); Roggio v. FBI, Civ. No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug. 17, 2011) (finding that plaintiffs failed to establish good cause by failing to amend complaint with facts known long before they sought leave to amend); Stallings v. IBM, Civ. No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sep. 8, 2009) (collecting cases and stating "[p]erhaps the most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend").  As noted above, fact discovery expired nine months before the present motion.  Accordingly, even if the proposed claims are based on facts learned in discovery, the Court is constrained to find that Plaintiffs acted diligently.

Because good cause does not exist to allow Plaintiffs to file the proposed Second Amended Complaint, the Court need not consider other bases to evaluate this motion.  See E. Minerals, 225 F.3d at 340.

### V. CONCLUSION

For the reasons stated herein, Plaintiffs' motion for leave to file a Second Amended Complaint is denied.  The Court will issue an order consistent with this Opinion.

s/ <i>Michael A. Hammer</i><br>United States Magistrate Judge

Date: October 31, 2011